IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Sun Life Assurance Company of Canada, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 06588 |
| | ) | |
| vs. | ) | |
| | ) | |
| Wells Fargo Bank, N.A., et al., | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, the portion of plaintiff's motion [32] directed to striking the first through thirteenth and the fifteenth affirmative defenses is denied as to the sixth, seventh and eighth affirmative defenses to the extent they relate to a return of premiums paid. Otherwise, the request to strike the first through thirteenth and the fifteenth affirmative defenses is granted. Plaintiff's motion to dismiss Counts I and II of the counterclaim are denied. Plaintiff's motion to dismiss Count III of the counter claim is granted. Plaintiff's motion to dismiss Count IV of the counterclaim is granted in part and denied in part. It is denied to the extent that Count IV seeks restitution for premiums paid by the Bank and otherwise is granted. Nelsen's motion [40] to dismiss is denied.

## STATEMENT-OPINION

Plaintiff, Sun Life Assurance Company of Canada (a Canadian corporation with its principal place of business in Massachusetts), brings this action against Wells Fargo Bank, N.A., as securities intermediary ("Bank") (a national banking association with its main office as designated in its articles of association in South Dakota), and Frank Nelsen[1]. Nelsen is an Illinois citizen. The amount in controversy exceeds $75,000. Subject matter jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332(a)(1),(2). Counts I and II of the complaint are brought against the Bank under the Declaratory Judgment Act (28 U.S.C. § 2201) and ask the court to declare that a certain life insurance policy issued by plaintiff on the life of Robert Corwell was void ab initio as an illegal wager on human life (Count I) and lacked an insurable interest (Count II). It also seeks to recover from Nelsen, an Illinois insurance producer, for fraudulent inducement (Count III), fraud (Count IV), negligent misrepresentation (Count V), and breach of contract (Count VI). The Bank answered [20] the complaint, asserted affirmative defenses and filed counterclaims. Plaintiff moves [32] to strike all but one of the Bank's fifteen

---

[1] The complaint names him as "Nelson" but he says "Nelsen" is his name.

affirmative defenses and to dismiss the Bank's counterclaims. Nelsen moves [40] to dismiss the claims against him.

Robert Corwell died on June 25, 2017. At the time of his death, the Bank, as securities intermediary, was the owner and beneficiary of a five million dollar insurance policy on Corwell's life issued by plaintiff in August 2006. In July 2017, the Bank submitted a death benefit claim. Plaintiff did not pay the claim or tell the Bank that it was denying the claim. Instead, on September 12, 2017, plaintiff filed this action, which as to the Bank, asks for a declaratory judgment that the policy was void ab initio as an illegal wager on human life because the policy was procured by persons who lacked an insurable interest in Corwell's life. Under controlling Illinois law, a policy procured by persons with no insurable interest in the life of the insured is void at its inception (ab initio). Charbonnier v. Chicago Nat'l Life Ins. Co., 266 Ill. App. 412 (1932). The result of a life insurance policy being found to be void ab initio is that the insurer does not have to pay the death benefit and gets to keep all of the premiums paid to it up until that point. Ohio Nat'l Life Assurance Corp. v. Davis, 803 F.3d 904, 911 (7th Cir. 2015); Penn Mutual Life Ins. Co. v. Greatbanc Trust Co., 887 F. Supp.2d 822, 831-32 (N.D. Ill. 2012). Illinois law does allow an exception for a party who paid premiums but was not in pari delicto as to the unlawful contract. Such a party is allowed to recover from the insurer the premiums it paid. Davis, 803 F.3d at 911. Illinois also has a statute that allows a court to tax as costs attorney fees, costs, and statutory penalties "[i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable." 215 ILCS 5/155(1).

In response to plaintiff's complaint, the Bank filed an answer, including affirmative defenses, and counterclaims asserting breach of contract (CC Count I), a statutory claim under 215 ILCS 5/155 (CC Count II) and in the event plaintiff succeeds in obtaining a declaration the policy was void ab initio, a claim for refund of premiums (CC Count III), and for restitution of premiums paid under an unjust enrichment theory (CC Count IV). Plaintiff moves to strike all but one of the affirmative defenses and to dismiss the counterclaims, arguing that plaintiff's declaratory judgment action bars the Bank from claiming breach of contract (CC Count I) and a vexatious and unreasonable refusal to pay under 215 ILCS 5/155(1) (CC Count II). Plaintiff argues CC Counts III and IV must be dismissed because a return of premiums is not allowed under Illinois law for a policy that is void ab initio and that, to the extent the Bank may be entitled to a refund on an unjust enrichment theory per Davis, that such a claim merely presents the mirror image of plaintiff's request for relief and is, therefore, duplicative.

The Bank raises fifteen affirmative defenses. Plaintiff moves to strike all of the affirmative defenses except one, the fourteenth, which asserts plaintiff's claim to retain the premiums is barred by unjust enrichment. The Bank does not contest the motion to strike as to the first, tenth, twelfth, or fifteenth affirmative defenses and, therefore, they are stricken. Additionally, the Bank makes no argument in support of the ninth, eleventh, and thirteenth affirmative defenses. These three affirmative defenses relate to plaintiff's damages but, as

plaintiff observes, it is not seeking damages against the Bank. These three affirmative defenses are also stricken. That leaves the second through eighth affirmative defenses in dispute.

In its complaint, what plaintiff seeks against the Bank is a determination that the policy was procured by parties with no insurable interest in Corwell's life. Such a policy is void at its inception (ab initio) under Illinois law. Charbonnier v. Chicago Nat'l Life Ins. Co., 266 Ill. App. 412 (1932). A contract is void ab initio if it expressly contravenes the law or known public policy of Illinois. In re Marriage of Newton, 955 N.E.2d 572, 584 (Ill. App. 2011). A contract that is void ab initio "is treated as though it never existed; neither party can choose to ratify the contract by simply waiving its right to assert the defect." Id.

The Bank's second affirmative defense asserts plaintiff's claim is barred by the applicable statute of limitations and/or by the policy's incontestability period. In its argument, the Bank addresses only the incontestability issue. It argues that if the policy is found to be valid (i.e. not void ab initio), then the incontestability provision of the policy bars plaintiff from challenging the policy. Plaintiff does not dispute this, acknowledging that if the policy is found to be valid (i.e. not void ab initio), then the Bank "would have already prevailed on the merits" and "the affirmative defense would be moot." The Bank acknowledges that if a policy is found to be void ab initio, then it is not subject to an incontestability clause contained in the policy. Therefore, there is no disagreement between plaintiff and the Bank on this point. If the policy never came into existence, there is no policy and, necessarily, no incontestability provision. If the policy did come into existence, the Bank is entitled to enforce it. The second affirmative defense, therefore, is moot.

The Bank's third affirmative defense is that plaintiff's "purported claim for rescission (and/or declaratory relief)" is barred by ratification. However, plaintiff is not seeking rescission and if it establishes the policy was void ab initio, the policy cannot be ratified by either party. Id. Ratification is not an available defense to the claim against the Bank. The fifth affirmative defense asserting waiver by plaintiff is also not an available defense for the same reason. Id.

The Bank's fourth affirmative defense asserts plaintiff's claim is barred for failing to make an election of remedies by seeking to "rescind and/or void the policy" and return the parties to the status quo ante by returning all premiums paid to date. However, when a contract is found to be void ab initio, the court does not return the parties to the status quo ante but leaves them where it finds them in the position they have placed themselves with no recovery of money paid for illegal services. Ohio Nat'l Life Assurance Corp. v. Davis, 803 F.3d 904, 911 (7th Cir. 2015); Penn Mutual Life Ins. Co. v. Greatbanc Trust Co., 887 F. Supp.2d 822, 831-32 (N.D. Ill. 2012). Election of remedies is not a defense to a claim a contract is void ab initio.

The Bank's sixth (estoppel), seventh (laches), and eighth (unclean hands) affirmative defenses all go to the Bank's claim plaintiff knew long before Corwell's death that it was going to attack the policy as void ab initio but that, despite that knowledge, plaintiff took no action prior to Corwell's death in order to dupe the Bank into continuing to pay the premiums which plaintiff knew it would be able to retain if it succeeded in having the policy declared void ab

initio. Under Illinois law, even if this proves to be true, plaintiff's wrongful conduct does not make a contract that was void at inception enforceable. The Bank, however, may be entitled to equitable relief of restitution for premiums innocently paid. If the Bank was not in pari delicto as to the unlawful contract, then Illinois allows it to recover from plaintiff the premiums it paid. Davis, 803 F.3d at 911. Plaintiff acknowledges that it was for this reason that the Bank's unjust enrichment affirmative defense to plaintiff's claim to retain the premiums was the one affirmative defense plaintiff did not seek to strike. While it is probably true that unjust enrichment is the correct equitable theory under which to seek to defeat plaintiff's attempt to keep the premiums, id.; Greatbanc, 887 F. Supp.2d at 832, at this time, the court will not foreclose estoppel, laches, and unclean hands as alternative equitable theories for doing so.

Fed. R. Civ. P. 13(a)(1)(A) requires that a pleading must state as a counterclaim any claim the pleader has against an opposing party if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. "[W]hen an insurer sues for a declaratory judgment of nonliability, the insured must plead his claim under the policy as a Rule 13(a) counterclaim." 6 Wright and Miller, Federal Practice and Procedure Civil 3d § 1410.1. Pursuant to Rule 13(a), the Bank has filed a counterclaim pleading its claim under the policy to the death benefit asserting breach by plaintiff (CC Count I). The Bank also seeks to recover under 215 ILCS 5/155(1) for a vexatious and unreasonable action or delay by plaintiff concerning payment of the death benefit (CC Count II).

The counterclaim alleges plaintiff issued a $5 million life insurance policy to Corwell with the Corwell Family Limited Partnership as beneficiary. The partners of the Corwell Family Limited Partnership, which had been established in 1993, were Corwell, his wife, and his children. The initial premium payment in the amount of $147,059.49 was made with a check drawn on a Corwell Family Limited Partnership account. In September 2006, the Robert M. Corwell 2006 Insurance Trust became the owner and beneficiary. Corwell's wife was co-trustee and beneficiary of this trust. In August 2009, the Bank became the owner and beneficiary. Plaintiff recorded and recognized the Bank was the sole owner and beneficiary of the policy. All of the premiums were paid throughout the term of the policy. Corwell died in 2017. The Bank provided proof of death and filed a death benefit claim. Plaintiff refused to pay the Bank the death benefit even though the Bank had performed all that was required of it under the policy.

The Bank has alleged the existence of a contract, the Bank's performance, and plaintiff's breach resulting in damage to the Bank. These are the elements of a breach of contract claim in Illinois. Avila v. CitiMortgage, Inc., 801 F.3d 777, 786 (7th Cir. 2015). Despite the Bank pleading facts that support a breach of contract claim, plaintiff argues the counterclaim must be dismissed. Plaintiff contends it has not refused to pay the death benefit and thus has not breached the contract. Plaintiff argues all it has done is file a declaratory judgment action to see if it has to pay the claim. Relying on Lincoln Nat'l Life Ins. Co. v. Schwarz, No. 09-03361(FLW), 2011 WL 2347828, *3 (D. N.J. June 9, 2011), plaintiff maintains filing a declaratory judgment action is not, as a matter of law, a refusal to pay and, thus, its filing precludes the CC Count I claim for breach. Plaintiff also argues that because there is a bona fide dispute on whether or not the policy is valid, plaintiff's delaying payment and filing this action

cannot be vexatious and unreasonable requiring dismissal of CC Count II.  <u>Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.</u>, 200 F.3d 1102, 1110 (7th Cir. 2000).

Addressing first CC Count II, the filing of a declaratory judgment action by an insurer can be a vexatious and unreasonable action supporting an award under 215 ILCS 5/155(1).  The statute's language is clear on this point when it states "[i]n any action by . . . [an insurance] company wherein there is in issue the liability of a company on a policy . . . and it appears to the court that such action . . . is vexatious and unreasonable the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs plus [statutory penalties]." 215 ILCS 5/155(1); <u>see</u> <u>Harleysville Lake States Ins. Co. v. Boller Constr. Co., Inc.</u>, No. 04 C 6237, 2005 WL 1323321, *3 (N.D. Ill. May 31, 2005); <u>Old Republic Ins. Co. v. Chuhak & Tecson, P.C.</u>, 906 F. Supp. 1177 (N.D. Ill. 1995), <u>reversed on other grounds</u>, 84 F.3d 998 (7th Cir. 1996).  "Determining whether conduct is vexatious or unreasonable is a factual question determined by looking at the totality of the circumstances."  <u>Lawhon-Davis v. Reassure America Life Ins. Co.</u>, No. 12 C 182, 2015 WL 8153124, *6 (N.D. Ill. Dec. 8, 2015).  It is a question for the court, not a jury. <u>Id.</u>

Taking the allegations and drawing all inferences favorably to the Bank for purposes of this motion to dismiss, plaintiff knew the policy was validly issued with Corwell as the owner and the Corwell Family Limited Partnership (with the partners being Corwell, his wife and children) as the beneficiary and that ownership and the beneficial interest in the policy was assigned, with plaintiff's consent, in September 2006 to the Robert M. Corwell 2006 Insurance Trust of which Corwell's wife was co-trustee and beneficiary.  Thus, plaintiff knew the policy was not void ab initio because it knew the policy was procured by and owned by an individual or entity with an insurable interest in Corwell's life at inception and for three years after the policy was issued.  The counterclaim, therefore, states a claim that plaintiff's decision to delay paying the claim and its decision to file this declaratory judgment action were vexatious and unreasonable since plaintiff knew its claim that the policy was void ab initio was not true.

<u>Citizens</u>, relied on by plaintiff, is distinguishable.  <u>Citizens</u> was an appeal after a bench trial.  The trial court awarded attorneys fees and costs under section 155 because the insurer "unaccountably mishandled the bank's claim."  <u>Citizens</u>, 200 F.3d at 1110.  While the trial court found the insurer presented a legitimate (albeit unsuccessful) policy defense at trial, it faulted the insurer for waiting until suit was filed to press this defense and only turning to that defense when the primary defense it had raised was "found to be of no value whatsoever." <u>Id.</u>  The court of appeals reversed the section 155 award holding that based on the record from the bench trial the insurer's original reasons for denying coverage were not baseless, its switch to a different defense at trial after learning more facts was not unreasonable, and the defense was not vexatiously asserted to deny the claim. <u>Id.</u>  Here no factual determination has, or can, be made.  Whether a bona fide dispute exists is a factual matter that must be determined at a later stage in this case.  It cannot be resolved on a motion to dismiss.

Turning to CC Count I, the policy provides that the "Policy Proceeds will be paid in a lump sum upon our receipt of Due Proof of the Insured's death."  "Due Proof" is defined in the policy as "[s]uch evidence as we may reasonably require in order to establish that the Policy

Proceeds or any other benefits are due and payable."  Illinois law provides that for a death claim "settlement shall be made upon receipt of due proof of death and not later than 2 months after receipt of such proof." 215 ILCS 5/224(1)(j).  Drawing all inferences in favor of the Bank, the evidence plaintiff had in its possession (that an insurable interest was present at inception and for three years thereafter) demonstrated the policy was valid at inception, and, therefore, Due Proof had been presented.  The proceeds were not paid within two months of Due Proof being presented.  Therefore, plaintiff breached the contract by refusing or delaying payment since it had all the evidence it could "reasonably require."

Also, normally, a declaratory action would not take precedence over a substantive action. The exercise of jurisdiction by a district court under the Declaratory Judgment Act (28 U.S.C. § 2201) is discretionary not obligatory.  Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.  Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.")  Where a "substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serves no useful purpose because the controversy has ripened and the uncertainty and anticipation of litigation is alleviated." Amari v. Radio Spirits, Inc., 219 F. Supp.2d 942, 944 (N.D. Ill. 2002) (quotation marks and citations omitted).  "The federal declaratory judgment is not a prize to the winner of the race to the courthouse." Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 750 (7th Cir. 1987) (quotation marks and citations omitted). Certainly, the Bank's breach of contract claim would "resolve the issues raised by the declaratory judgment action." Amari, 219 F. Supp.2d at 944.  In light of the nature of the remedy provided by the Declaratory Judgment Act, the court is not prepared to find on a motion to dismiss that it is compelled to dismiss this substantive counterclaim because plaintiff brought its declaratory judgment action first.  To the extent any other court has found otherwise, this court respectfully disagrees.  CC Count II is sufficient to clear the initial hurdle presented by a motion to dismiss.

Count III of the counterclaim seeks a refund of all premiums paid to plaintiff if the policy is found to be void.  Count IV of the counterclaim seeks restitution on an unjust enrichment theory of all premiums paid to plaintiff if the policy is found void.  As noted above in the discussion of affirmative defenses, if the policy is found to be void ab initio, the Bank may be entitled to restitution for premiums paid by the Bank if the Bank is found not to have been in pari delicto as to the unlawful contract.  Davis, 803 F.3d at 911.  Any recovery by the Bank of premiums paid is limited to payments innocently made by it.  The Bank would not be entitled to restitution of all premiums received  by plaintiff from any source but only to those premiums paid innocently by the Bank itself. Id.  Accordingly, Count III of the counterclaim is dismissed. Count IV of the counterclaim is dismissed except to the extent it seeks to recover premiums paid by the Bank.

In addition to suing the Bank, plaintiff also sues defendant Nelsen, an insurance producer for fraudulent inducement (Count III), fraud (Count IV), negligent misrepresentation (Count V), and breach of contract (Count VI) relating to the issuance of the policy. Nelsen moves to dismiss the claims against him arguing the policy's incontestability provision bars the suit and that the complaint does not meet the pleading requirements of Fed. R. Civ. P. 9(b).

Where a policy is void ab initio, the incontestability provision never comes into play because the policy is treated like it never existed. Charbonnier, 266 Ill. App. At 421-22. It "is void at its inception and is not rendered valid by a clause declaring it incontestable after the lapse of a specific time period." Id., at 422. An incontestability clause "cannot be used as a vehicle to sanctify that which never existed." Obartuch v. Security Mutual Life Ins. Co., 114 F.2d 873, 878 (7th Cir. 1940). Nelsen argues that the policy was not void ab initio because the policy's issuance was supported by an insurable interest but that is a factual determination that cannot be made on a motion to dismiss.

Moreover, Nelsen is not a party to the insurance policy nor an intended beneficiary of it and, therefore, cannot invoke the incontestability clause. Under Illinois law, there is a strong presumption "that the contracting parties intend that the terms of their agreement apply only to them, not to others. Even the fact that the contracting parties may have known, expected, or even intended that others would indirectly benefit from their agreement is not enough to overcome the presumption that the contract was intended only to directly benefit the contracting parties. Only direct beneficiaries have rights against the promisor and incidental beneficiaries have no rights whatsoever. If the contract does not identify [an individual] by name or the class to which he belongs, then [the individual] is not a third-party beneficiary of the contract." James v. SCR Medical Transportation, Inc., 61 N.E.3d 1043, 1052 (Ill. App. 2016) (citations omitted). The policy does not identify Nelson nor any class to which he belongs as intended third-party beneficiaries to the policy. Only the owner and the beneficiary as defined in the policy have rights against plaintiff under the policy. Under the terms of the policy the Bank, by virtue of an assignment pursuant to the policy's provisions, is the owner and beneficiary. Nelsen cannot enforce any of the policy's provisions against plaintiff, including the incontestability provision, because he is not a party to the policy nor an intended third-party beneficiary of it.

Nelsen also argues the complaint fails to meet the pleading standard of Fed. R. Civ. P. 9(b). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This standard "ordinarily requires describing the 'who, what, when, where and how' of the fraud." AnchorBank, FSB v. Hofer, 649 F.3d 610, 615 (7th Cir. 2011). "The requirement that fraud be pleaded with particularity compels the plaintiff to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless." Fidelity Nat'l Ins. Co. v. Intercounty Nat'l Title Ins. Co., 412 F.3d 745, 748-49 (7th Cir. 2005) (citations omitted).

Plaintiff has met the requirements of Rule 9(b). Plaintiff alleges that Nelsen made knowingly false statements and representations and intentional omissions of material facts to induce plaintiff to issue a policy it otherwise would not have issued on Corwell's life. These misrepresentations and omissions are alleged to include misrepresenting the source of the

premium payments as Corwell himself, that the purpose of the insurance was primarily for estate planning, that the premiums would not be funded by a premium finance loan either at issuance or in the future and failing to disclose that Corwell had previously been included in a life settlement transaction, that there had been discussions about transferring the policy to an investor group or other third party within five years of issuance and that Corwell had previously had a policy underwritten by a life settlement company. The misrepresentations and omissions occurred in Corwell's application for insurance which was signed by Nelsen and in the "Life Insurance Source of Premium Eligibility Worksheet" executed by Nelsen. Plaintiff alleges it reasonably relied on Nelsen's misrepresentations and omission and was damaged thereby. Plaintiff further alleges that these misrepresentations and omissions by Nelsen violated the duty of care he, as a licensed insurance producer, owed to plaintiff and breached the insurance producer contract between them. These allegations provide Nelsen enough detail to effectively dispute plaintiff's claim. Id. It is quite clear what plaintiff is alleging Nelsen did that plaintiff claims was fraudulent and how it was injured by Nelsen's actions.

For the foregoing reasons, the portion of plaintiff's motion [32] directed to striking the first through thirteenth and the fifteenth affirmative defenses is denied as to the sixth, seventh and eighth affirmative defenses to the extent they relate to a return of premiums paid. Otherwise, the request to strike the first through thirteenth and the fifteenth affirmative defenses is granted. Plaintiff's motion to dismiss Counts I and II of the counterclaim are denied. Plaintiff's motion to dismiss Count III of the counter claim is granted. Plaintiff's motion to dismiss Count IV of the counterclaim is granted in part and denied in part. It is denied to the extent that Count IV seeks restitution for premiums paid by the Bank and otherwise is granted. Nelsen's motion [40] to dismiss is denied.

Date: 5/07/2018                             ENTER:

_Philip G. Reinhard_
_____
                          United States District Court Judge

Electronic Notices. (LC)